UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------
SHIMON HERZ
on behalf of himself and
all other similarly situated consumers

                         Plaintiff,

           -against-


LAW OFFICES OF STEVEN COHEN LLC
AND PALISADES COLLECTION L.L.C.

                   Defendants.

------------------------------------------------------------

## CLASS ACTION COMPLAINT

### *Introduction*

1.     Plaintiff Shimon Herz seeks redress for the illegal practices of Law Offices of Steven Cohen LLC ("Steven Cohen") and Palisades Collection L.L.C. ("Palisades"), concerning the collection of debts, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et *seq.* ("FDCPA") and the General Business Law section 349 ("GBL").

### *Parties*

2.     Plaintiff is a citizen of the State of New York who resides within this District.

3.     Plaintiff is a consumer as that term is defined by Section 1692(a)(3) of the FDCPA, in that the alleged debt that Defendants sought to collect from Plaintiff is a consumer debt.

4.     Upon information and belief, Defendant Steven Cohen's principal place of business is located in Bronx, New York.

5.     Upon information and belief, Defendant Palisades' principal place of business is located in Englewood Cliffs, New Jersey.

6.      Defendants are regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

7.      Defendants are "debt collectors" as that term is defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

## Jurisdiction and Venue

8.      This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

## Allegations Particular to Shimon Herz

10.     Upon information and belief, on a date better known by Defendants, Defendants began to attempt to collect an alleged consumer debt from the Plaintiff.

11.     On or about May 23, 2007, a lawsuit was commenced against Shimon Herz in Kings County Civil Court. Palisades Collection L.L.C. was the plaintiff in the suit.

12.     The suit alleged that Shimon Herz owed a sum of $ 7,273.88 to Palisades Collection.

13.     On or about October 19, 2018, Defendant Steven Cohen mailed a Notice of Garnishment / Income Execution to the Plaintiff on behalf of the Judgment Creditor, Palisades.

14.     However, on February 26, 2019, the New York State Department of Corporations stated that no certificate of publication was filed for or by Defendant Law Offices of Steven Cohen LLC.

15.     A limited liability company (LLC), is required to publish their formation, and file proof of publication of their LLC within 120 days of the filing of their application for authority.

16.    At the time of the Law Offices of Steven Cohen LLC's representation in the state action against Shimon Herz, it has failed to publish, and has failed to file any certificate of publication and/or failed to file any sort of proof or affidavit of publication, as required.

17.    The New York State Department of Corporations has stated that Pursuant to the New York Limited Liability Company Law, failure to file the certificate of publication results in suspension of authority to do business in New York State, and a prohibition of bringing or representing any legal proceedings in New York State during the period of noncompliance.

18.    At the time of the Law Offices of Steven Cohen LLC's representation in the action against Shimon Herz, its authority to do business had been suspended.

19.    During the period of noncompliance, Defendant Steven Cohen was prohibited from representing Defendant Palisades in any proceding.

20.    During the period of noncompliance, Defendant was prohibited from conducting business in New York State.

21.    At the time of the mailing of the said letters and subpoenas Defendant Steven Cohen's authority to do business had been suspended.

22.    The least sophisticated consumer is unlikely to search and/or to have the ability or knowledge to search Department of State records to determine whether Steven Cohen's authority to do business is suspended, and/or to determine whether Defendant was prohibited from bringing a legal proceeding.

23.    Defendants did not inform the consumer that the debt allegedly owed was to being collected by a debt collector which had no authority to do business in New York.

24.    15 U.S.C. § 1692e of the FDCPA states:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(2) The false representation of

(A) the character, amount, or legal status of any debt;

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt.

25. 15 U.S.C. § 1692f provides in pertinent part:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

26. Defendant Steven Cohen violated the above provisions of the statute because it had no right to collect this debt.

27. Defendant Steven Cohen's activities in collecting this debt were deceptive, misleading, and/or false.

28. Defendant Steven Cohen's collection techniques involved asking consumers to pay debts when it had no legal ability to ask for payment.

29. Defendant Steven Cohen's collection techniques involved sending subpoenas to consumers to pay debts when it had no legal ability to be involved in any legal action during its suspension.

30. Doing business in New York when Defendant's authority to do business had been suspended violates 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(10), and 1692f.

31. In the affidavit of service dated July 3, 2007, it was claimed that Palisades' agents served the summons and complaint upon a certain Leah Herz, an alleged relative of Shimon Herz on June 28, 2007.

32. The address of service was 1227 President St Apt 3C Brooklyn, NY 11225.

33.    There is no person and / or relative by the name of Leah Herz, nor does Mr. Herz know

of any such individual.

34.    More importantly, Shimon Herz did not reside and, never has resided at the address of

service as stated above.

35.    The address of Shimon Herz at the time of service was at 1229 President St Brooklyn, NY

11225.

36.    Defendant Palisades in all its documents only contain the address of 1229 President St

Brooklyn, NY 11225.

37.    Defendant Palisades itself, ultimately admitted that it had caused Mr. Herz to be served at

the wrong address.

38.    As such, Plaintiff Shimon Herz was only recently informed about the fraudulent

judgement that had been filed against him and therefore, the Statute of Limitations is still

in effect. See Sykes v. Mel Harris & Assocs., LLC, 2010 U.S. Dist. LEXIS 137461, 17

(S.D.N.Y. Dec. 29, 2010)

39.    Shimon Herz was never served with a summons and complaint, either personally, by

substitute service, or by nail and mail service.

40.    Defendant has been sued multiple times for its fraudulent schemes in which they obtain

fraudulent default judgments by way of Sewer Service and other means.[1] See Mayfield v.

---

[1] Olajide v. Palisades Collection, LLC, No. 15-CV-7673 (JMF), 2016 U.S. Dist. LEXIS 48795, at *3-5 (S.D.N.Y. Apr. 12, 2016) ("In his Amended Complaint, Plaintiff alleges that, in 2006 and 2007, one of Palisade's debt-collection law firms, Wolpoff & Abramson ("W&A"), sued and obtained (on Palisade's behalf) a default judgment against him to recoup a debt of $502.15, excluding interest, that Plaintiff allegedly owed to AT&T (and that AT&T had assigned to Palisades). (Am. Compl. (Docket No. 9) ¶¶ 21-22; see id., Exs. 1, 2). Plaintiff alleges that the process server who had supposedly served the summons and complaint, Luis Agostini, did not actually effect proper service; indeed, Plaintiff alleges that Agostini conducted so-called "**sewer service**" by fraudulently representing that he had served an unidentified co-tenant of Plaintiff's. (Am. Compl. ¶¶ 28-32). As a result — [*5]  and because Plaintiff did not, in fact, even have an AT&T account — Plaintiff did not learn of the action or judgment against him until roughly seven years later, after Palisades hired another firm, Houslanger & Associates ("H&A"), to enforce the judgment. (Id. ¶¶ 23-27, 33). After H&A was notified of the possible issues with service of the complaint, H&A agreed to vacate the

<u>Asta Funding, Inc.</u>, 95 F. Supp. 3d 685, 699-700 (S.D.N.Y. 2015)  ("Plaintiffs allege that Defendants brought consumer debt lawsuits against them without sufficient evidence to prove the debt, filed fraudulent affidavits in support of their claims, and engaged in "**sewer service**" so that Plaintiffs never received notice of the suits. When Plaintiffs failed to appear in court, Defendants obtained and enforced default judgments.... Plaintiffs have sufficiently pleaded the existence of a RICO enterprise. The Complaint alleges the Defendants were associated together for the common purpose of securing default judgments in debt collection actions through fraudulent means. The Complaint details the actions of each of the Defendants in furtherance of the scheme and describes their relationships to each other. Plaintiffs allege that Asta, at Stern's direction, conceived the "legal strategy" underlying the alleged scheme and directed the purchase of the debts from AT&T. **Palisades Collection**, a subsidiary of Asta, is the owner of the debts and commenced fraudulent debt collection actions by and through Pressler & Pressler, a law firm retained by Asta ... Plaintiffs' pleading is far from conclusory. Plaintiffs sufficiently allege an enterprise comprised of a coordinated group of individuals and organizations, each of which played specifically-alleged roles in a fraudulent scheme that lasted over eight years.")

41.     The affidavit of service was therefore fraudulent. See <u>Velazquez v. Thompson</u>, 451 F.2d 202, 204 (2d Cir. 1971). ("'Sewer service' is an ignominious practice which is not limited to summary proceedings for the eviction of tenants but is also employed in suits on installment payment contracts for personal property permitting repossession and

---

default judgment and dismiss the action. (*Id.* ¶ 35). Plaintiff claims that, based on the foregoing, W&A, H&A, Palisades, and Alta (Palisades's parent company) are liable for violations of the FDCPA. Plaintiff also seeks to pursue the action on behalf of a class.")

garnishment, providing a fertile field for the fleecing of the poor and the disadvantaged."),
Kovalesky v. A.M.C. Associated Merchandising Corp., 551 F. Supp. 544, 546 (S.D.N.Y.
1982). ("'[S]ewer service' constitutes shoddy practice. It delays the process of justice and
must be discouraged. This court has discretion to do just that.")15 U.S.C. § 1692a(6)(d);
See generally, Sykes v. Mel Harris & Assocs., LLC, 2010 U.S. Dist. LEXIS 137461, 17
(S.D.N.Y. Dec. 29, 2010), citing Romea v. Heiberger & Assocs., 163 F.3d 111, 117 (2d
Cir.1998) ("Thus, process servers whose involvement is merely 'limited to serving the
[debt collection] communication on the consumer – in effect, to being messengers' – are
exempt."), Sykes v. Mel Harris & Assocs., LLC, 2010 U.S. Dist. LEXIS 137461, *18
(S.D.N.Y. Dec. 29, 2010), citing Flamm v. Sarner & Assoc., P.C., 2002 U.S. Dist. LEXIS
22255, 2002 WL 31618443, at *5 (E.D.Pa. Nov. 6, 2002), Sykes v. Mel Harris & Assocs.,
LLC, 2010 U.S. Dist. LEXIS 137461, 18 (S.D.N.Y. Dec. 29, 2010), McNall v. Credit
Bureau, 689 F. Supp. 2d 1265, 1278 (D. Or. 2010).

42. Upon information and belief, at all times relevant to this Complaint, Defendant Palisades
aided and abetted the fraud, perjury, breach of official duty and other wrongful acts
committed by the process servicing company that attempted service upon Shimon Herz
on June 28, 2007.

43. Defendant Palisades violated 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1692e(10) and
1692f of the FDCPA, by making false and misleading representations, and engaging in
unfair and abusive practices. Defendants' violations include, but are not limited to:

A. Producing and filing fraudulent affidavits of service that falsely claim that Plaintiff
and class members were served with a summons and complaint when in fact they were
not;

B. Producing and filing false attorney affirmations stating that service of the summons and complaint has been made, when in fact it was not;

C. Using fraudulent, deceptive, and misleading affidavits and affirmations to obtain default judgments against Plaintiffs and class members under false pretenses;

44. As a direct and proximate result of Defendant Palisades violations of the FDCPA, Plaintiff has sustained actual damages in an amount to be proved at trial and is also entitled to statutory damages, costs and attorneys' fees.

45. In addition to the foregoing, Palisades' claim to own a debt on which the Plaintiff was liable for purposes of the collection action was frivolous, baseless, and without good faith.

46. At no time did the Plaintiff receive notice of any assignment from the assigner/creditor, Bank One to the Defendant Palisades.

47. The Defendants were well aware that the assigner/creditor, never gave notice to the debtor, and therefore they were not allowed to collect on this debt.

48. Defendants attempted to confuse and mislead the Plaintiff into assuming that Defendants had in fact been assigned the Plaintiff's alleged debt despite knowing that the Plaintiff never received any notice of said assignments.

49. Because Plaintiff did not receive the foregoing notices of assignment, any collection proceedings by Palisades, including Palisades' collection summons and complaint against Plaintiff, were prohibited by New York State law.

50. Defendants' identifying of the debt as one being owed to Palisades attempted to confuse and mislead the Plaintiff to believe that she was in fact previously and properly notified of the assignment when no such notice had ever been given.

51. Defendants materially misrepresented in the sewer served collection complaint that they

had the right to collect on the alleged debt, *i.e.*, they misrepresented that they were the assignees of the account and lease that was the basis of the action against Plaintiff Shimon Herz, and that there was a valid chain of title from the original creditor(s) down to the Defendant Palisades.

52. This constituted a materially false and misleading representation with regard to the character and legal status of the debt Defendants were attempting to collect.

53. In the absence of proper notices of assignments from the assignors in the alleged chain of title of assignments, Defendants were not entitled to pursue any collection litigation or other collection activities against the Plaintiff, and therefore deceptively and misleadingly (to the least sophisticated consumer) alleged in their collection complaint against Shimon Herz that they were entitled to collect on the alleged debt.

54. Defendant Steven Cohen on behalf of Palisades has a pattern and practice of repeatedly filing and sewer serving collection lawsuits in which they are unable to show that they have standing or ownership of the debt they are attempting to collect, and in which they do not intend to prove their case.

55. New York law requires an assignor, not an assignee, to provide a consumer with notice that a debt or judgment has been assigned. Matter of Pinpoint Techs. LLC, 2014 NY Slip Op 51695(U), ¶ 4, 45 Misc. 3d 1223(A), 1223A (Civ. Ct.). ("This court has held that in consumer credit litigation, the assignor of the debt or in this case of a judgment has an obligation to serve a notice of the assignment of the debt on the defendant [*Chase Bank, USA, NA v. Cardello*, 27 Misc 3d 791, 896 N.Y.S.2d 856 (2010); *Tri City Roofers, Inc. v. Northeastern Industrial Park*, 61 NY2d 779, 461 N.E.2d 298, 473 N.Y.S.2d 161 (1984)]. The notice must be from the original creditor, or the judgment creditor, to the defendant

at the defendant's last known address. It should contain information informing the defendant that the debt has been sold, and include the name, address and contact information of the assignee, as well as similar information for counsel of the assignee, if there is a change of attorney.")

56. Even if there had been an assignment, until an assignor creditor gives notice to the debtor of the assignment the debtor has no liability to any party other than the original creditor. Tri City Roofers, Inc. v. Ne. Ind. Park, 61 N.Y.2d 779, 780, 473 N.Y.S.2d 161, 162 (1984); N.Y. Jur. 2d, Assignments, § 55.

57. When a debt collector attempts to collect on a debt and is aware that creditor did not give notice to the consumer of its assignment such an attempt to collect on the debt violates the FDCPA. The failure to provide notice of an assignment of a debt or judgment violates due process because the New York Court of Appeals has held that, "in order to be charged with a duty to pay a debt to an assignee, [a consumer] must first have actual notice of the assignment." Id. (quoting Tri City Roofers, Inc. v. Nw. Indus. Park, 61 N.Y.2d 779, 781, 461 N.E.2d 298, 473 N.Y.S.2d 161 (1984)); see also TPZ Corp. v. Dabbs, 25 A.D.3d 787, 808 N.Y.S.2d 746 (App. Div. 2006). (holding that a consumer becomes obligated to an assignee only when "the . . . debtor receives notification that the amount due or to become due has been assigned").

58. Defendants were not legally entitled to take steps to collect on the debt at the time they undertook collection efforts, thereby rendering such attempts in violation of the FDCPA.

59. As held by multiple federal and state courts in New York, under New York law, an assignee may not attempt to collect on an assigned debt until the consumer has actual notice of the assignment, and it is the assignor's obligation to provide such notice.

60.    Defendants violated 15 U.S.C. § 1692e(5) by threatening in the collection summons and complaint to take action that cannot be legally taken.

61.    Defendants violated 15 U.S.C. § 1692e(5) by undertaking collection actions against Plaintiff even though Defendants failed to prove that a proper notice of assignment by the assignor for each assignment in the chain of title was given to the Plaintiff.

62.    Defendants further violated 15 U.S.C. § 1692e(5) since they threatened to take judgment based on allegations in a complaint that they did not intend to prove.

63.    Defendant Palisades claims to be an assignee to Plaintiff's debt and threatened to collect on the assigned debt despite knowing that Plaintiff did not receive any notices of the assignment, Plaintiff has sufficiently pled violations of section 1692e(4), 1692e(5) and 1692f(6) all of which prohibit threats to take action that is not legally authorized. Musah v. Houslanger & Assocs., PLLC, 962 F. Supp. 2d 636, 639 (S.D.N.Y. 2013). (The Plaintiff alleged that prior to the collection law firms initiation of the collection action against the Plaintiff on behalf of a supposed creditor, Plaintiff did not receive notice that the debt had been assigned to that creditor, and therefore at the time of the law firms collection efforts, the law firm was not legally entitled to take any steps to collect on the debt, thereby rendering such attempts in violation of the FDCPA. The court found that these allegations provide a suitable basis for Plaintiff's FDCPA claims since the New York Court of Appeals has held that "[a] debtor, in order to be charged with a duty to pay a debt to an assignee, must first have actual notice of the assignment."), Moukengeschaie v. Eltman, Eltman & Cooper, P.C., No. 14-CV-7539 (MKB), 2016 U.S. Dist. LEXIS 43725, at *39 (E.D.N.Y. Mar. 31, 2016). (Plaintiff stated a claim that the Collection Letter violated section 1692e(4), e(5) and f(6) by threatening actions that Defendants cannot

legally take based on the allegation that Plaintiff did not receive notice of the assignment of debt. The debt collector was an alleged assignee to Plaintiff's debt and threatened to collect on the assigned debt before Plaintiff received notices of the assignment. The Court denied Defendants' motion to dismiss and found that the Plaintiff sufficiently pled violations of section 1692e(4), e(5) and f(6), all of which prohibit threats to take action that is not legally authorized.) [2]

64.   The Defendants' actions violate 15 U.S.C. §§ 1692e(4), 1692e(5) and 1692f(6) by threatening actions that Defendants cannot legally take based on the fact that Plaintiff did not receive notice of the assignment of the debt.

65.   The Defendants deceptively engaged in the collection of an invalid debt purportedly owed by the Plaintiff.

66.   Section 1692e of the FDCPA states:

> "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (2) The false representation of --

---

[2] Chase Bank USA, N.A. v. Cardello, 2010 NY Slip Op 20090, ¶ 3, 27 Misc. 3d 791, 794, 896 N.Y.S.2d 856, 858 (Civ. Ct.). ("It is clear however, that due process requires that notice of the assignment be given to the debtor by the assignor and not by the assignee. The credit card holder had his or her agreement with the credit card issuer and not with the unknown third-party debt purchaser so that receipt of notice from the third-party debt purchaser does not satisfy due process standards. Allowing the assignee to give notice would enable dishonest debt collectors to search the court records, obtain the names of judgment debtors and send the debtor a letter stating they have purchased the debt from credit card issuers such as Chase and the debtor should make all payments to the third party. Requiring the assignor-credit card issuer to serve the notice would reduce the incidents of fraud in this regard. The Federal Fair Debt Collection Practices Act lists "false, deceptive or misleading" practices, some of which would not be available by requiring a notice of assignment to be given by the assignor to the debtor. The trend in consumer protection law is to require such notice (see Uniform Consumer Credit Code 1974 § 3.204, ULA Cons Credit § 3.204 [2009]), especially in dealing with consumer credit debt where the vast majority of defendants are unrepresented, unsophisticated individuals. As the Court of Appeals stated in Tri City Roofers v. Northeastern Indus. Park (61 NY2d 779, 781, 461 NE2d 298, 473 NYS2d 161 [1984]): "A judgment debtor is not called upon to search the county's records every time he is served with an execution or desires to make a payment on his debt." The failure to establish that notice of the assignment was given to the debtor makes the assignment ineffective.") S. Shore Adj Co. v. Pierre, 2011 NY Slip Op 51436(U), ¶ 3, 32 Misc. 3d 1227(A), 1227A, 936 N.Y.S.2d 61, 61 (Civ. Ct.)  ("In Chase Bank USA, NA v. Cardello, 27 Misc 3d 791, 896 N.Y.S.2d 856 (Civil Ct, Richmond Co. 2010). Judge Straniere concluded that bulk assignments by Chase to debt collectors violated every tenet of due process. He found that due process mandated that the assignor, and not the assignee notify the debtor of the assignment, since the credit card holder had his agreement with the credit card issuer, "and not with the unknown third party debt purchaser." Judge Straniere elaborated that to allow an assignee third party debt purchaser to give notice "would enable dishonest debt collectors to search the court records, obtain the names of judgment debtors and send the debtor a letter stating that they had purchased the debt "from a credit card issuer and that the debtor had to pay up or face court action. This practice would merely increase fraud and deceptive and misleading practices which were precisely why the federal Fair Debt Collections Practices Act ("FDCPA") was enacted.")

(A) the character, amount, or legal status of any debt."

67.  Section 1692(f) of the FDCPA states:

"A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

68.  The Defendants misrepresented the legal status of the alleged debt, as the debt was not owed by the Plaintiff.[3]

69.  Defendants violated 15 U.S.C. §§ 1692e(2)(A) and 1692f(1) for the false representation of the character, amount, or legal status of the debt, and for collecting on a debt which was not expressly authorized by the agreement creating the debt or permitted by law.

70.  Defendants should have conducted the minimum due diligence required under the law regarding abuse of process, frivolous pleadings, and misstating the amount, character and legal status of the Plaintiff's debt.

71.  Defendants' abuse of process was in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5),

---

[3] See Vangorden v. Second Round, Ltd. P'ship, No. 17-2186-cv, 2018 U.S. App. LEXIS 20939, at *7-9 (2d Cir. July 27, 2018) ("In sum, because [the debtor] pleaded facts plausibly asserting [the debt collectors] misrepresentation of her Debt obligation, her § 1692e(2) claim should not have been dismissed under Fed. R. Civ. P. 12(b)(6). Further, because the June Letter, after allegedly misstating [the debtors] Debt obligation, requested payment of the Debt, we conclude that [the debtor] has plausibly alleged that [the debt collector] both used a "false representation" in a debt collection effort in violation of § 1692e(10), and attempted to collect a debt amount not "expressly authorized by the agreement creating the debt or permitted by law" in violation of § 1692f(1)...Thus, by pleading that defendant attempted to collect an amount not authorized by agreement or permitted by law, the plaintiff has stated a plausible claim under § 1692f(1) without need for further allegations of unfairness or unconscionability.") Lee v. Kucker & Bruh, LLP, 2013 U.S. Dist. LEXIS 110363, 2013 WL 3982427 (S.D.N.Y. Aug. 2, 2013). ("Defendants argue that they are not liable for violating the FDCPA because they did not know that they were misrepresenting that Mr. Lee's account was delinquent. ([Footnote 1] Defendants rely on the decision in *Stonehart v. Rosenthal*, No. 01 Civ. 651, 2001 U.S. Dist. LEXIS 11566, 2001 WL 910771, at *6 (S.D.N.Y. Aug. 13, 2001) (holding that to "state a claim under § 1692e(2) of the FDCPA, [the plaintiff] must show that [the debt collector] knowingly misrepresented the amount of the debt"), and similar district court cases inside and outside this circuit. These cases, however, are at odds with binding Second Circuit precedent.), See also Goldman v. Cohen, No. 01 Civ. 5952, 2004 U.S. Dist. LEXIS 25517, 2004 WL 2937793, at *10, n.11 (S.D.N.Y. Dec. 17, 2004), aff'd on other grounds, 445 F.3d 152 (2d Cir. 2006). (concluding that analysis in *Stonehart* contradicts the plain language of 1692k(c) and the law as stated by the Second Circuit). This argument is contrary to binding Second Circuit precedent. The Defendants here are strictly liable for their violation of § 1692e. This Court holds that the misrepresentation in the Three Day Notice, the Verification and the Petition for summary nonpayment eviction of a debt supposedly owed by Mr. Lee for rent and fuel charges, when in fact he was current on his payments, is a violation of § 1692e(2)(A)."), Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP, No. 16-2165-cv, 2017 BL 407422 (2d Cir. Nov. 14, 2017). ("[S]ection 1692f contains a non-exhaustive list of unfair practices, including the collection of an invalid debt."))

1692e(10), 1692f and 1692f(1).

72. As a result of the Defendants' fraudulent legal action, Plaintiff has suffered pecuniary and non-pecuniary harm.

73. The Plaintiff's actual damages, without limitation, sleep deprivation, stomach pains, anxiety and difficulty in performing her work.

74. The Plaintiff's damages will also include the cost of retaining counsel to defend and dismiss the fraudulent State Action.

75. As a result of the unlawful collection activity which Defendants, engaged in, Plaintiff is also entitled to damages pursuant to GBL § 349.

76. Plaintiff suffered actual harm by being the target of the Defendants' misleading debt collection communications.

77. Defendants violated the Plaintiff's right not to be the target of misleading debt collection communications.

78. Defendants violated the Plaintiff's right to a truthful and fair debt collection process.

79. Defendants used materially false, deceptive, misleading representations and means in its attempted collection of Plaintiff's alleged debt.

80. Defendants' communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to Defendants' collection efforts.

81. The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. The Defendants' false representations misled the Plaintiff in a manner that deprived him of his

right to enjoy these benefits, these materially misleading statements trigger liability under section 1692e of the Act.

82. These deceptive communications additionally violated the FDCPA since they frustrate the consumer's ability to intelligently choose his or her response.

83. As an actual and proximate result of the acts and omissions of the Defendants, Plaintiff has suffered including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment for which he should be compensated in an amount to be established by a jury at trial.

<u>**AS AND FOR A FIRST CAUSE OF ACTION**</u>

***Violations of the Fair Debt Collection Practices Act brought by Plaintiff on behalf of himself and the members of a class, as against the Defendants.***

84. Plaintiff re-states, re-alleges, and incorporates herein by reference, paragraphs one (1) through eighty-three (83) as if set forth fully in this cause of action.

85. This cause of action is brought on behalf of Plaintiff and the members of three classes.

86. Class A consists of all persons whom Defendants' records reflect resided in the State of New York and who were sent a collection letter in substantially the same form letter as the letter sent to the Plaintiff on or about October 19, 2018; and (a) the collection letter was sent to a consumer seeking payment of a personal debt; and (b) the collection letter was returned by the postal service as undelivered; (c) and Plaintiff asserts that the letter contained violations of 15 U.S.C. §§ 1692, 1692e, 1692e(2)(a), 1692e(5), 1692e(10), and 1692f, for doing business when its authority to do so in New York had been suspended.

87. Class B consists of all persons whom Defendants' records reflect resided in the State of New York; (a) to whom a lawsuit was commenced against them in Kings County Civil Court; (b) wherein the Defendant Palisades claimed that its agents had served a summons

and complaint upon Shimon Herz and his spouse, however, the Plaintiff believes that he was never served with a summons and complaint, either personally, by substitute service, or by nail and mail service; and (c) the Plaintiffs assert that Defendant Palisades violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(9), 1692e(10), 1692e(11), 1692e(14), and 1692f, for using a process server who engages in sewer service.

88.    Class C consists of all persons whom Defendants' records reflect resided in the State of New York who communicated with Defendants' representatives within one year prior to the date of the within complaint up to the date of the filing of the complaint; (a) Defendants misled Plaintiff to believe that he was in fact previously and properly notified of the assignment when no such notice had ever been given; and (b) Defendants violated 15 U.S.C. §§ 1692d, 1692e(2), 1692e(2)(A), 1692e(5), 1692f, and 1692f(1).

89.    Pursuant to Federal Rule of Civil Procedure 23, a class action is appropriate and preferable in this case because:

    A.    Based on the fact that a form collection letter is at the heart of this litigation, the class is so numerous that joinder of all members is impracticable.

    B.    There are questions of law and fact common to the class and these questions predominate over any questions affecting only individual class members. The principal question presented by this claim is whether the Defendants violated the FDCPA.

    C.    The only individual issue is the identification of the consumers who received such collection letters (*i.e.* the class members), a matter capable of ministerial determination from the records of Defendants.

D. The claims of the Plaintiff are typical of those of the class members. All are based on the same facts and legal theories.

E. The Plaintiff will fairly and adequately represent the class members' interests. The Plaintiff has retained counsel experienced in bringing class actions and collection-abuse claims. The Plaintiff's interests are consistent with those of the members of the class.

90. A class action is superior for the fair and efficient adjudication of the class members' claims. Congress specifically envisions class actions as a principal means of enforcing the FDCPA. 15 U.S.C. § 1692(k). The members of the class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action. Prosecution of separate actions by individual members of the classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

91. If the facts are discovered to be appropriate, the Plaintiff will seek to certify a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

92. Collection attempts, such as those made by the Defendants are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

### *Violations of the Fair Debt Collection Practices Act*

93. The Defendants' actions as set forth above in the within complaint violates the Fair Debt Collection Practices Act.

94. Because the Defendants violated the Fair Debt Collection Practices Act, the Plaintiff and the members of the class are entitled to damages in accordance with the Fair Debt Collection Practices Act.

WHEREFORE, Plaintiff, respectfully requests preliminary and permanent injunctive relief, and that this Court enter judgment in his favor and against the Defendants and award damages as follows:

A.  Statutory damages provided under the FDCPA, 15 U.S.C. § 1692(k);

B.  Attorney fees, litigation expenses and costs incurred in bringing this action; and

C.  Any other relief that this Court deems appropriate and just under the circumstances.

## AS AND FOR A SECOND CAUSE OF ACTION

*Violations of GBL § 349 brought by Plaintiff on behalf of himself and the members of a class, as against the Defendant Palisades*

95.  Plaintiff re-states, re-alleges, and incorporates herein by reference, paragraphs one (1) through eighty-three (83) as if set forth fully in this cause of action.

96.  Plaintiff is a consumer as that term is defined in New York, General Business Law section 349 (NY GBL Sec. 349).

97.  As stated above, Defendant Palisades deceptively attempted to collect a consumer debt from Shimon Herz to which it could not prove that it was the assignee in the collection action together with other deceptive acts and practices set forth above.

98.  Defendant Palisades failed to provide proof of any sequence of the assignment between the creditor(s) and itself.

99.  Defendant Palisades attempted to confuse and mislead the Plaintiff into assuming that it had been assigned purchased Plaintiff's alleged debt despite knowing that the Plaintiff never received any notice of said assignment.

100.  Because Plaintiff did not receive the foregoing notices of assignment, any collection proceedings by Palisades, including Palisades' collection summons and complaint against

Plaintiff, were prohibited by New York State law.

101.    Defendant Palisades' deceptive conduct was consumer oriented in that it engaged in the foregoing deceptive collection activities against the Plaintiff with respect to an alleged consumer debt, and which could affect the public at large.

102.    In fact, Defendant Palisades engaged in deceptive practices in collecting consumer debts with regard to numerous other residents of New York in the public at large.

103.    The conduct of the Defendant Palisades in collecting and attempting to collect monies owed when it was not allowed to pursuant to the New York Limited Liability Law constitutes deceptive or materially misleading activity that is directed at consumers and the public at large and caused consumers to suffer financial injuries of having increased debt and having money extracted from them.

104.    Defendant Palisades' practices were deceptive and misleading in a material way. The deceptive practices were likely to mislead a reasonable consumer acting reasonably under the circumstances.

105.    As a result of the unlawful collection activity which Defendant Palisades engaged in, Plaintiff is entitled to damages pursuant to GBL § 349, including actual damages.

WHEREFORE, Plaintiff, respectfully requests preliminary and permanent injunctive relief, and that this Court enter judgment in his favor and against the Defendant and award damages as follows:

    A.    GBL § 349;

    B.    Attorney fees, litigation expenses and costs incurred in bringing this action; and

    C.    Any other relief that this Court deems appropriate and just under the circumstances.

Dated: Woodmere, New York
September 17, 2019


\_\_\_\_\_/s/ Adam J. Fishbein_____
Adam J. Fishbein, P.C.  (AF-9508)
Attorney At Law
**Attorney for the Plaintiff**
735 Central Avenue
Woodmere, New York 11598
Telephone: (516) 668-6945
Email: fishbeinadamj@gmail.com


Plaintiff requests trial by jury on all issues so triable.


\_\_\_\_\_/s/ Adam J. Fishbein\_\_\_\_
Adam J. Fishbein (AF-9508)

*Marshal City of New York*

# MARTIN A. BIENSTOCK
## Badge No. 75

36-35 Bell Boulevard
P.O. Box 610700
Bayside, N.Y. 11361-0700
FAX: 718-423-0014

(718) 279-

October 19, 2018

HERZ, SHIMON

**JUDGMENT CREDITOR**

PALISADES COLLECTION L.L.C
A/A/O BANK ONE

**VS**

HERZ, SHIMON

**JUDGMENT DEBTOR**

# NOTICE OF GARNISHMENT

Please take notice that a judgment has been entered against the above named judgment debtor. Pursuant to the **INCOME EXECUTION** delivered to me, you are required to make arrangements and have your first payment in my office within 20 days from the above date. Upon your default, a copy of this execution will be served upon any person (corporation, etc.) from whom you are receiving or will receive money and will result in additional costs to you.

| | |
|---|---|
| JUDGMENT . . . . . . . | $8,956.24 |
| STATUTORY MARSHAL FEES . . | $0.00 |
| POUNDAGE . . . . . . . | $893.43 |
| EXPENSE . . . . . . . | $6.29 |
| INTEREST . . . . . . . | $8,906.28 |
| **TOTAL** . . . . . . . . | $18,762.24 |

IN ADDITION, INTEREST FROM 10/19/18 will be calculated on a daily basis. You will be notified of the final balance due when your payments approach completion.

ALL PAYMENTS SHOULD BE MARKED
WITH YOUR NAME AND THIS DOCKET NUMBER:

61

and be made payable to:

**MARTIN A. BIENSTOCK**
**City Marshal - Badge No.75**

CIVIL COURT OF THE CITY OF NEW YORK, COUNTY OF KINGS, INDEX NO.
Judgment Creditor(s):

**PALISADES COLLECTION  L.L.C.  AAO BANK ONE,**

**INCOME EXECUTION**
**THE PEOPLE OF THE STATE OF NEW YORK**
Judgment Debtor(s)(name and last known address)   TO THE ENFORCEMENT OFFICER, GREETING:

The Enforcement Officer is the Sheriff, Marshal of the City or Constable of
the Town or Village authorized by law to enforce income execution.

SHIMON HERZ
1229 PRESIDENT ST
BROOKLYN NY 11225-1605

A Judgment was entered in the within court in favor of the Judgment Creditor(s) and the particulars are as follows:

| Court of Original Entry | Entry Date | Original Amount | Amount Due | Plus Interest From |
|---|---|---|---|---|
| Civil Court, KINGS | October 10, 2007 | $8956.24 | $8956.24 | October 10, 2007 |

The Judgment was recovered against SHIMON HERZ, defendant(s), and transcripted with the Clerk of          County on

This execution is issued against SHIMON HERZ, defendant(s), whose last known address is 1229 PRESIDENT ST, BROOKLYN NY 11225-1605, whose social security number is          . and who is receiving or will receive $500.00 (approx.) for each WEEKLY pay period from the Employer, "Employer", herein, includes any payor of money to Judgment Debtor.  The Employer's name and address is

You are directed to satisfy the judgment with interest together with your fees and expenses, out of all monies now and hereafter due and owing to the Judgment Debtor from the Employer pursuant to CPLR □ 5231.

**Directions to Judgment Debtor:** You are to notify and commended immediately to start paying to the Enforcement Officer serving a copy of this Income Execution on you: installments amounting to 10% (but no more than the Federal limits set forth in Limitations on the amount that can be withheld, below) of any and all salary, wages or other income, including any and all overtime earnings, commissions or other irregular compensation received or hereafter to be received from your Employer and to continue paying such installments until the judgment with interest and the fees and expenses of this Income Execution are fully paid and satisfied, and if you fail to do so within 20 days, this Income Execution will be served upon the Employer by the Enforcement Officer.

**Directions to the Employer:** You are commanded to withhold and pay over to the Enforcement Officer serving a copy of the Income Execution on you: installments amounting to 10% (but no more than the Federal limits set forth in I. Limitations on the amount that can be withheld, below) of any and all salary, wages or other income, including any and all overtime earning commissions or other irregular compensation now or hereafter becoming due to Judgment Debtor until the judgment with interest and the fees and expenses of this Income Execution are fully paid and satisfied.

Dated:  October 12, 2018

STEVEN COHEN

LAW OFFICES OF STEVEN COHEN LLC.
Attorneys for Judgment Creditor(s)
540 East 180th Street, Suite 203
Bronx, New York 10457
(212)564-1900
File No. 89146

**IMPORTANT STATEMENT**

This income execution directs the withholding of up to 10 percent of the judgment debtor's gross income.  In certain cases, however, state or federal law does not permit the withholding of that much of the judgment debtor's income.  The judgment debtor is referred to New York Civil Practice Law and Rules □ 5231 and 15 United States Code □ 1671, et seq.

I.      LIMITATIONS ON THE AMOUNT THAT CAN BE WITHHELD:

A.      An income execution for installments from a judgment debtor's gross income cannot exceed ten percent (10%) of the judgment debtor's gross income.

B.      If a judgment debtor's weekly disposable earnings are less than thirty (30) times the current federal minimum wage ($7.25* per hour), or ($217.50)* or the New York State/City Minimum of (see attachment*) no deduction can be made from the judgment debtor's earning under this income execution.

C.      A judgment debtor's weekly disposable earnings cannot be reduced below the amount arrived at by

multiplying this thirty (30) times the current federal minimum wage ($7.25* per hour) or ($217.50)* or the New York State/City Minimum wage (*see attachment *) under this income execution.

      D.      If deductions are being made from a judgment debtor's earnings under any for alimony, support or maintenance for family members or former spouses, and those deductions equal or exceed twenty-five percent (25%) of the judgment debtor's disposable earnings, no deduction can be made from the judgment debtor's earnings under this income execution.

      E.      If deductions are being made from a judgment debtor's earnings under any orders for alimony, support or maintenance for family members or former spouses, and those deductions are less than twenty-five (25%) of the judgment debtor's disposable earnings, deductions can be made from the judgment debtor's earnings under this income execution. However, the amount arrived at by adding the deductions from earnings made under this income execution to the deductions made from earnings under any orders for alimony, support or maintenance for family members or former spouses cannot exceed twenty-five percent (25%) of the judgment debtor's disposable earnings.

NOTE:  NOTHING IN THIS NOTICE LIMITS THE PROPORTION OR AMOUNT WHICH MAY BE DEDUCTED UNDER ANY ORDER FOR ALIMONY, SUPPORT OR MAINTENANCE FOR FAMILY MEMBERS OR FORMER SPOUSES.

II. EXPLANATION OF LIMITATIONS:

Definitions

Disposable Earnings - Disposable Earnings are that part of an individual's earnings left after deducting those amounts that are required by law to be withheld (for example, taxes, social security and unemployment insurance, but not deductions for union dues, insurance plans, etc.)

Gross Income - Gross income is salary, wages or other income, including any and all overtime earnings, commissions, and income from trusts, before any deductions are made from such income.

ILLUSTRATIONS REGARDING EARNINGS:

| If disposable earnings is: | Amount to pay or deduct from earnings under this income execution is: |
|---|---|
| (a) Less than 30 times the greater of the federal ($217.50*) or state minimum wage ($312.00/$360.00/$390.00** or $330.00*** or $352.50/$405.00^) or less. | No payment or deduction allowed. |
| (b) More than 30 times the greater of the federal ($217.50*) Or State minimum wage ($312.00/$360.00/$390.00**) Or ($330.00***) or $352.50/ or $405.00^) and less than 40 Times the federal ($290.00*) or state minimum wage ($416.00/$480.00/$520.00**) or ($440.00***) or ($470.00/ $540.00^) | The lesser of The excess over 30 times greater of the federal minimum wage ($217.50*) or the state minimum wage of ($312.00/$360.00/$390.00**) or ($330.00***) or ($325.50/$405.00^)<br><br>The lesser of 25% of disposable earnings of 10% of gross earnings |
| (c) 40 times the greater of the federal ($290.00) or state Minimum wage ($416.00/$480.00/$520.00**) or ($440.00***) or ($470.00 or $540.00^) | |

III.    NOTICE:    YOU MAY BE ABLE TO CHALLENGE THIS INCOME EXECUTION THROUGH THE PROCEDURES PROVIDED IN CPLR ☐ 5231(i) AND CPLR ☐ 5240.

      If you think that the amount of your income being deducted under this income execution exceeds that amount permitted by state or federal law, you should act promptly because the money will be applied to the judgment. If you claim that the amount of your income being deducted under this income execution exceeds the amount permitted by state or federal law, you should contact your employer or other person paying your income. Further, YOU MAY CONSULT AN ATTORNEY, INCLUDING LEGAL AID IF YOU QUALIFY. New York State law provides two procedures through which an income execution can be challenged.

      CPLR ☐ 5231(i) Modification:  At any time, the judgment debtor may make a motion to the court for an order modifying     an income execution.

      CPLR ☐ 5240 Modification or protective order: supervision of enforcement:  At any time, the judgment debtor may make a motion to a court for an order denying, limiting, conditioning, regulating, extending or modifying the use of any post-judgment enforcement procedure, including the use of income executions.

*  Based upon $7.25 federal minimum wage effective July 24, 2009.  ** Based upon $10.40 NYS minimum wage; or $12.00 NYC minimum wage with 10 or less employees and $13.00 for more than 10 employees effective December 31, 2017. *** Based upon $11.00 minimum wage for employers in Nassau, Suffolk and Westchester counties, effective December 31, 2017. # Based upon $11.75 NYS minimum wage for fast food employees effective December 31, 2017. ^ Based upon $13.50 NYS minimum for fast food employees located in NYC effective December 31, 2017.